The issue here is whether, by voluntarily provoking the interference in the PTO, the university necessarily waived the 11th Amendment immunity with respect to the review or appeal in a 146 action. Well, it's not really by provoking the interference, it's by taking it to the district court, isn't it? That is an issue. Well, I think the waiver occurs with the provoking of the interference. And you're saying it necessarily involves appealing if you lose. That's right. That is something that's there, two options, 141 and 146. But once that is provoked, then that waiver brings in necessarily the review or appeal of that action in the district court. But administrative procedure is not really litigation. I mean, as a technical matter, the parties didn't start the interference at all, the PTO did. Well, that's about it. They just kind of requested, please do this. Well, they copied the claims. Sure, sure. And then they say, take a look at this. And even the board's decision says they initiated the interference. They did initiate the interference. That action, copying those claims, asking that that be done, is very similar to a party going in, a state intervening in a case. They ask the court whether they can intervene. The court has discretion whether to let them intervene or not. But of course, they're asking, is the waiver of the state immunity? And that should apply here, too. But this is an administrative procedure with kind of the court would be compelled to rule on the motions before it. The PTO here could have simply said, no, we don't think there's a overlap. That's true. But let's step back. What would the difference be if this was a 291 action? Same thing. Same interference issues. Going to the district court. That shouldn't really make any difference. And what PETA's really points out, that this idea of waiver has to be judged in the sense of fairness and not giving some kind of litigation tactics to somebody. Here, they wanted to strip the rights of a patent that VASCAP had. They initiated a procedure and got the PTO to go through that and do that. How do you get around ZCAM? Well, ZCAM is merely the statement that in an ex parte procedure, that getting the patent doesn't say that you waive immunity as a state for all other things that could come up about that patent. Yeah, but doesn't your theory say by getting that patent, there is an implication of an acceptance that correcting the inventorship, which was ZCAM, follow on subsequent actions relating to that, create a waiver? Quite a bit different. First off, here we're implicated in the first instance in the inter-parties interference. So we have two parties' interests to begin with here. It is not the case in the other situation. Not in ZCAM? Not in getting the patent itself, Your Honor. It's an ex parte application procedure. So that doesn't carry you down that route. Moreover, there are other remedies available in that case. Go to the state and deal with contract issues. That really involved a lot of contract issues. Here, there is but one remedy. There is only one oversight possible, and that is oversight by a federal court. You don't think section 141 constitutes another remedy? 141 and 146 are both the remedies that are available. But there isn't one that has to be followed. Congress made it clear that either one is a rebuke. This court's determinations have made it clear that 146 is derivative of the interference process, just as much as 141. So there's nothing in Congress's enactment of 141 or 146 to say that you've got to go one way or the other. But their argument, at least initially, the state's, the university has been, you can't do either. There is no waiver of immunity, so you can't go to a federal court here on appeal any more than you can go to a district court for review of the same issues. Now, let's get to Ex parte Young. Yes. There was a state actor who was actually doing something, and the issue was joining that state actor. These curators weren't doing anything, were they? Well, Your Honor, I think that your recent decision in the Pennington case probably controls this issue with respect to Ex parte Young. Well, we don't certainly want to waive that issue in terms of our right to appeal it further. Nevertheless, we think the emphasis today should be very specific on waiver issue here. And in that regard, the issue was raised, well, this is administrative. Why is the waiver the same there? You're really not seeing an explicit waiver. You're saying there's kind of an implicit waiver in the fact that they copied the claims and asked them to conduct an interference. That's correct, Your Honor, and I think Lapidus points out that waiver Can you implicitly waive something of this nature? Yes, Your Honor, I believe you can in connection with litigation conduct, the litigation conduct, the voluntary action. But again, that gets us back to whether this is litigation conduct. What do you do with the Second and Ninth Circuit cases, McQuinty and Quillett, that say administrative procedures don't waive? Not apposite here whatsoever, because in both instances, in the administrative bodies below. EEOC and the Interior Board. Right. The state or the tribe was dragged in. They weren't there voluntarily. They didn't do anything voluntarily to start it. This is much more akin to the First Circuit's decision in New Hampshire, which I may point out is the only case that we really have that has where the state is starting the activity. In the New Hampshire case, the state chose to go through this administrative body, and it was pointed out. Well, but that really could be seen as just a judicial estoppel case, right? They waited for the result and didn't like it, and then they said, oh, well, now we're going to be immune, and it was a little late. Isn't that a way of looking at the New Hampshire case? It certainly reigns in the context of estoppel, but I'll point out what the First Circuit said. The state voluntarily put itself in the position of being a party in a federal administrative forum whose actions would be reviewed in federal court. The state's actions expressed a clear choice to submit its rights for adjudication in the federal courts. To permit the state to reverse course would contravene the reasons for the doctrine of waiver by litigation conduct recognized by Petey's. Petey's, of course, is the 11th Amendment Supreme Court. So I think it's very clear that in that case there was certainly the discussion of judicial estoppel, but here they're looking at the waiver by going forward in that administrative forum. So you're not really relying on the fact that this was an administrative proceeding with a statutory appellate path. One of the first things that you told us was that your argument would be the same if, in fact, this interference issue had been initiated in the district court rather than as an appeal. That is correct, Your Honor. I think it is the same because the act of waiver... I realize that's not the issue here, but I'm trying to understand where you believe. But if you really are relying on waiver by the initiation of, let's say, litigation by the state, don't you have a much weaker case than if you were relying on the statutory right of appeal from an administrative proceeding, however the state got into the administrative proceeding? I understand what you're saying there, Your Honor. Yes, I think we can rely on both. I'm pointing out that I think the initial waiver here occurred right in that administrative proceeding. But the fact that we have a right by statute to this oversight appeal, that's brought in also. And I think that the McKesson case there is somewhat informative because it points out that when you go to the appeal and that in effect what the 146 action is here, you don't need to find a new waiver. The initial waiver derives through the review. So let's say that the state did not copy the claims, that they were just there and the patent office did what it's supposed to do, is to find conflicting claims between pending applications and declare the interference at its initiative without any initiation by either side. That would change your argument dramatically, would it not? Well, I think it would certainly change the argument with respect to did they do something to waive at that initial stage? Yes. But they would participate in the interference over all these years, as you've pointed out, rather than saying you can't do this to me on the state? That is true. I think you'd have to argue at that point that the participation in litigation itself can be a waiver because there's been no 11th Amendment raised throughout that time. And then the issue that you raised that the fact that Congress is giving an appeal right would let you proceed to have oversight. And that oversight, I want to point out, it's very important here for a couple of reasons. First off, there's just a fairness aspect to this. And we are being deprived of a property right here. There is a 14th Amendment issue here. It's usually dealt with when we look at Florida prepaid and some of the other cases, say, well, yeah, but you can go here or you can go here. Well, here, we've only got, this is our sole forum. Our sole remedy is 141 or 146. There's no reason we had to choose 141. Florida prepaid didn't depend on the fact that they might have gone to some other tribunal or found some other remedy? Well, I think it did in terms of dealing with the due process. It said there isn't a 14th Amendment problem here because, well, it may not be convenient. You can go to the state to deal with any taking of property. So they said that the 14th Amendment... That wasn't why they said that the 11th Amendment applied, however. No, but that's why they said the 14th Amendment issue would not trump the 11th Amendment on a fairness ground. Here, what I'm suggesting is that it's more appropriate because we are being deprived of this property, right? And we have no way to go back and seek any other remedy. This is it. And I would also point out that in connection with this lack of remedy here, we are stuck in terms of the public's rights. Because remember, this is one of those anomalous situations where if they get the patent, in effect, we're going to end up with a patent with the same claims going for over 30 years. So the oversight that benefits the public who has been blocked... What does the 30 years have to do with it? Well, it's the public interest in getting oversight because they've been blocked for a number of years since the issuance of the patent of ASCAP. And then now, in effect, this patent could extend to block the public for a lot longer term. So that's a reason for waiving the 11th Amendment? That's another reason to look at why oversight is very important. And I think it is a reason to waive the 11th Amendment because when they start this process and they raise the specter of that possibility, there's got to be some way for the public to have oversight on that, too. And 146 is the way. Your Honor, I've run into my time. Yes, you are. Thank you, Mr. Valesko. Ms. McCurdy. Your Honor, there's only two ways that the university can be subject to a suit in federal district court. And the significance of the fact that this case was brought in district court cannot be overlooked. The distinction between administrative proceedings in one hand and being dragged into federal district court in the other hand is the very evil of which the 11th Amendment is directed, that is, judicial oversight. I don't recall your saying that if they'd come directly to the federal circuit, this issue was not present. Actually, Your Honor, contrary to what Mr. Valesko has said, from the beginning, we had no opportunity to make that argument. They did not. They forewent a direct appeal under 141. Instead, they filed suit against the state under 146. And so we responded to the 146 action by immediately asserting our right to immunity in the motion to dismiss. We did not answer. We did not otherwise plead. And we filed a motion to dismiss based on immunity and also based on jurisdictional grounds because the suit was incorrectly brought in D.C. when only the university was sued. But at all times, we asserted that immunity. The suggestion that perhaps we should have asserted immunity below or never participated in the patent office proceeding, we think, was addressed in ZKEMP, which says that a state does not waive, can participate in proceedings before the patent office attempting to get a patent. And that that's lawful activity. The state cannot be part of it. But that's different here. The state provoked this interference. It asked for the interference. This was a contentious proceeding. And doesn't that clearly imply an acceptance of subsequent actions that normally result from the conclusion of an interference, which is either a 141 or a 146 action? We think it does not. And also, remember, we don't think those two groups are equivalent. Because one is, in fact, a suit directly against the state with all the trappings that come with the federal district court action versus a straight appeal on the record. Subpoena power, rights over the parties, full federal district court. I forget my interference law. It's been a long time. But don't the federal rules apply to interferences? The federal rules do apply. But discovery is very different and extremely limited. In fact, the patent office has no power over the parties even to compel them to appear other than the power to render judgment against them. But getting to the point of what the university's actions were here, all of these actions were directed to activity that is contemplated by the rules of the patent office as well as the statute. All of it is directed towards getting the claims. The MPP, the manual that's directed to the examiner. Why does that matter? The university provoked this proceeding. Provoked is, there's many adjectives that are found in the above. Well, they asked for it. They asked for it. They asked for the interference as is required by the provisions if we want to get our claim. And if it really. The only way you get anything in a contentious proceeding is asking for it. Well, if you present a claim that's directed to the same invention as the patent office found that we did, there's a specific direction to the examiner that even if you're first to file, as we were, by over a year compared to their U.S. filing date. If the patent office has issued a patent already and providently to another party, then the examiner says you may not issue that patent to that applicant. Sorry, even though they support it, even though they want full support, even though it's free from all sort of patentable problems, they have to address the issue of the interference. We're looking at the PDs. We're looking at litigation conduct. Now, we all recognize this is administrative. But isn't this about the closest thing you can get to litigation in an administrative setting? It's inter partes. One initiates the action. There are motions. It proceeds under the rules of evidence. Isn't this about as close as you can get to litigation conduct? Your Honor, we think it's not. In fact, we think this sort of proceeding, which is not, for example, a cancellation proceeding, it is an opportunity for the only opportunity, for the university to get the claims that it's otherwise entitled to other than the improvidently granted patent to the later to file party. The patent office rules say you have to present the claim. But it's very much a litigation type of a context, isn't it? This isn't Zchem's ex parte sort of a setting. While it's inter partes, in fact, the presentation of the claims in the first instance was during ex parte. The patent office did not declare the interference until a long time after that. It's discretionary on them to declare it or not. They could find another reason why it should not be declared. But here, if we wanted that claim, this was the only way to get it. And we followed the procedures of the patent office, which present the claim, point out that there's a patent that claims the same invention. In fact, there's a disciplinary rule that if you don't point out that patent, that is implicated. And you can be reported to the commissioner. But we reported that that patent was directed to the same invention and also presented in interfering claims. All of these things are provided for by the MPP and the CFR. So you're telling us that if a state owns a patent and prevails in an interference, there's no basis for appeal? We think the state has not waived any 11th Amendment immunity from a district court action. That isn't what I asked you. I wasn't, I'm sorry. But we think that there are certainly different arguments that could be made to an appeal that's straight on the record, that doesn't suit the state, that doesn't involve discovery, that doesn't involve subpoenas, that doesn't involve, as in this case, listing 10 different officials and asserting wrongdoing by them. But the issue that's been raised in the 11th Amendment cases isn't whether the state is going to be subject to discovery or whatever else goes with interference. It's whether the state is subject to the authority of the tribunal, however the litigation is conducted. Isn't that right? But you're drawing the distinction that the state would nonetheless perhaps, I agree it wasn't an issue here, be subject to the authority of the Court of Appeals for the Federal Circuit but not the district court. That's certainly a hypothetical possibility. I mean, it did not happen, so the state was not faced with that issue. On the other hand, because there are great differences between a direct appeal on the record and you're not naming the state, it would be a closer case. That's what I'm trying to understand. You're saying that if it's on the record, the issues surrounding the state may be different than if the evidence is brought out through testimony? That's exactly right. And I think the McKesson case is not exactly on point but draws the contrast between, for example, the Supreme Court reviewing state courts' decisions and having the authority to do that while at the same time saying, you know, we recognize that certain cases could not be brought in federal district court. Original cases, original jurisdiction would implicate the 11th Amendment, whereas our review of it, of a state court decision that addresses federal law, is something that is proper because it's simply not a suit on the 11th Amendment. Here, there's no suggestion that a 146 action... I don't think that's the subject of the 11th Amendment. But the Supreme Court in McKesson didn't find waiver in that situation but found that they're exercising their jurisdiction in appellate capacity over state court decision was not a waiver issue but rather was, the case was not a suit protected by the 11th Amendment because the 11th Amendment protects original suits brought in federal district court. It's a case cited by my opponent for the proposition that appeals are okay to bring. Precisely. So, but isn't, I think that you've just emphasized that appeals are okay. But 146 actions, while they can be, while sometimes referred to as appeals, they're not appeals. They're district court actions that have all the trappings that we've listed in our brief, including being able to bring the state, you know, before that forum. It's a very different proceeding than a direct appeal on the record. It's a slightly different proceeding. Aren't they both litigation? Aren't they both before court? Aren't they both, either both or neither within the terms of the 11th Amendment? One can make the case for that. I'm just conceding, Your Honor, that a straight appeal, that does not name the state as they did here, for example, under 146, which says you may file an action by naming the party in interest. The fact that there's two roots doesn't mean they're both permissible. In fact, the Supreme Court has held that 146 was not intended to abrogate states' rights. And just because it's there doesn't mean they can sue the state. Simply by following the language that says you may, a party dissatisfied with a decision of the court may have a remedy by action in federal district court. Simply because it's there doesn't mean that Congress was saying it's okay to sue states under 146. Yes, there are alternate ways to seek review, but a 146 action is a trial de novo. And there are certainly certain cases that— But it's based on the issues that have been decided below with the opportunity to add new evidence. But you can't start out with totally new issues. Here we have an example of a totally new issue with my opponent naming the entire governing board of the university. He's backed off that issue. And seeking adjunctive support. But it shows the breadth of it. Certainly, you could not do that before this court, naming parties that make new claims. You implied that if they had gone to this court, the state wouldn't have been a defendant. Seems to me an appeal from the PTO in interference is between the two parties. Named in the interference are actually the inventors below. And the real part and interest is identified in the owner of the patent is the university here. But they would not be subject to a district court case. It all really has to do with the great difference between what can happen in district court. And the important threshold that that's passed when a court is dragged into federal district court. That the activity before the administrative agency cannot waive that unless it's fair express. That's college savings and followed by this court in ZCAM. Which said getting a patent and participating in those activities does not result in waiver. And there's no reason for not extending it to procedures. The patent office has an administrative agency for deciding who gets the patent. What's your best argument here? ZCAM? College savings and ZCAM. Yes, Your Honor. Because we cannot be viewed as having consented merely by participating in the administrative proceedings. But the strong difference is that this is an appeal from the administrative proceeding. It's still part of the process of obtaining the patent. Whereas all of the others were related to enforcing the patent in a form which is the form of the federal courts. While it's part of the process, the state is entitled to raise immunity at any point. And we are raising it at the first point that we had the opportunity. So you say we can participate if you give us the patent. But we can keep you from appealing and saying there was a mistake in giving us the patent. Here the objection of the university is to being brought into district court without having consented to that suit in federal district court. And the activity before the patent office was properly and appropriately directed toward getting claims it was entitled to. It was the only route that we had. To say that you have to assert immunity there first and you can't assert it at the district court level is to say you can't participate in the patent process. Because if we don't present the claim and point it out, we're not following the regulations and we can't get the claim. Okay. Anything else? No. All right. Thank you, Mr. Kirby. Mr. Berlusco. Thank you, Your Honor. A couple of quick points. First off, while his colleague Sagan certainly said that there's no implicit waiver, Laputa says that litigation conduct is an act that causes the waiver. That's exactly what we have here. And this notion that somehow now, well, 141 may be okay, but 146 isn't, is convenient, but is not what was ever argued below any underlying proceedings before. It's that there's just no waiver. You don't get to go forward. Is there a sound distinction between 141 and 145? No, Your Honor. Not in this context at all. And I think your Rexham case and conserva-like cases make it clear that a 146 action is an appeal, effectively. It is very constrained in its issues to priority and patentability issues. It is not a full-blown new case. The word de novo doesn't even show up in the statute. It's going to be an appeal in one form versus an appeal in another. And it's the only route we have. It would be quite untoward, and against what Laputa's held, to permit somebody to get in, go along in a proceeding that they started, and say, Hey, we won, and now you're done, without any review provided by Congress. Okay. Thank you very much. Thank you, Mr. Velasco. Mrs. Cody, the case is taken under submission. All rise.